**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **EMMA H. O/B/O S.J.M., A MINOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 18-CV-657-JFJ |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Plaintiff Emma H. ("Plaintiff"), on behalf of the minor child, S.J.M. ("Claimant"), seeks judicial review of the decision of the Commissioner of the Social Security Administration finding that Claimant is not disabled. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

A claimant for disability benefits bears the burden of proving a disability. 20 C.F.R. § 416.912(a). A person under the age of 18 is considered "disabled" under the Social Security Act if that individual has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Social Security regulations implement an abbreviated, three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act. *See* 20 C.F.R. § 416.924. At step one, a child will not be deemed disabled if he is working and such work constitutes substantial gainful activity. At step two, a child will not be found disabled if he does not suffer from a medically determinable impairment that is severe. At step three, a child will be found disabled if the child has "impairment(s) that meets, medically equals, or functionally equals the listings" and that satisfy the 12-month duration requirement. 20 C.F.R. §§ 416.924(a).

Whether a child's impairment "meets or medically equals" the listings and whether a child's impairment "functionally equals" the listings are separate inquiries under the step-three analysis. *See* 20 C.F.R. §§ 416.926 (explaining "medical equivalence" analysis); 416.926a (explaining "functional equivalence" analysis). In evaluating "medical equivalence," an impairment(s) is "at least medically equivalent to a listed impairment in appendix 1 of subpart P of part 404 of this chapter if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). In both child and adult cases, medical equivalence can be found in three ways:

> (1)(i) If you have an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but—
> (A) You do not exhibit one or more of the findings specified in the particular listing, or
> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
> (2) If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of

> a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.
> 
> (3) If you have a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 416.926(b).

In evaluating functional equivalence, the ALJ must evaluate all relevant factors, including (1) how well the child can initiate and sustain activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment. 20 C.F.R. § 416.926a(a)(1)-(3). The ALJ also must consider how the child functions in all his activities "in terms of six domains": "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A child's impairment functionally equals a listing if the child has "marked" limitations in two of the six functioning domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). *See* 20 C.F.R. § 416.926a(e) (defining "marked" and "extreme" limitations).

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including

3

anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, Claimant's grandmother, applied for Title XVI supplemental security income benefits on behalf of Claimant on August 6, 2015, alleging Claimant became disabled on September 5, 2014. R. 134-135, 156. Plaintiff alleged Claimant was disabled due to PTSD from her mother's murder, anger management problems, ADHD, and depression. R. 156. Plaintiff's claim for benefits was denied initially on November 3, 2015, and on reconsideration on January 7, 2016. R. 56-62, 63, 64, 65-72. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on October 17, 2017. R. 38-55. The ALJ issued a decision on January 25, 2018, denying benefits and finding Claimant not disabled at step three, because her impairments did not meet, medically equal, or functionally equal a listing. R. 14-37. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the application date of July 16, 2015.[1] R. 20. At step two, the ALJ found that Claimant had the severe impairments of post-traumatic stress disorder ("PTSD"), disruptive behavior disorder, and attention deficit hyperactivity disorder. *Id.* At step three, the ALJ found that Claimant had no

---

[1] The ALJ states the application date is July 16, 2015, but the application contained in the record is dated August 6, 2015. R. 134-135. The July 16, 2015 date could be a protected filing date, but the record does not reflect that information.

4

impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of a listed impairment.  R. 20-33.  In particular, the ALJ considered listings 112.11 (Neurodevelopmental disorders) and 112.15 (trauma and stressor-related disorders) but concluded the evidence of record failed to establish any of the requirements to meet or medically equal either listing.  R. 20-21.

In reviewing the six functional equivalence domains, the ALJ found that Claimant had "marked" limitations in the domain of Attending and Completing Tasks, and "less than marked" limitations in the three domains of Acquiring and Using Information; Interacting and Relating with Others; and Moving About and Manipulating Objects.  R. 28-29, 26-28, 29-31.  The ALJ found Claimant had no limitations in the two domains of Caring for Yourself and Health and Physical Well-Being.  R. 32-33.  Because Claimant did not have an impairment or combination of impairments that resulted in either "marked" limitations in two functional domains or "extreme" limitations in one functional domain, the ALJ concluded that Claimant was not disabled.  R. 34.

**III.   Issues**

Plaintiff raises three points of error in her challenge to the denial of benefits on Claimant's behalf: (1) the ALJ erred in his step-three analysis by "picking and choosing" only evidence favorable to a finding of not disabled; (2) the ALJ erred in his analysis of three of the six functional equivalence domains; and (3) the decision was rendered by an ALJ whose appointment was invalid at the time he rendered his decision.[2]  ECF No. 14.

---

[2] Neither party has urged the Court to decide the Appointments Clause issue as a threshold matter. In this case, it serves the interests of justice and efficiency to reach the Appointments Clause issue only if there are no other grounds for reversal.  Specifically, if the case must be remanded for other reasons, a claimant should not be subject to delays caused by a likely appeal.  *See infra* n.6. Because the Court finds no other grounds for reversal, the Court reaches the Appointments Clause issue in Part IV.C.

**IV.     Analysis**

    **A.     The ALJ Reasonably Concluded that Claimant's Impairments Did Not Meet or Medically Equal a Listing**

Both listings considered by the ALJ require that the child's impairment result in either an extreme limitation in one or a marked limitation in two of the four mental functioning areas known as the "B criteria" in order to meet or medically equal that listing. 20 C.F.R. Part 404, Subpt. P, App'x 1, §§ 112.11(B), 112.15(B). Plaintiff contends the ALJ's step-three determination was flawed because the ALJ engaged in improper picking and choosing, citing only portions of the record that support his findings (ECF No. 14 at 6), and that he did not "properly weigh evidence that was favorable to the Plaintiff such as the Vanderbilt Teacher Questionnaire forms and the opinions of Dr. Buck, the treating physician."[3]  ECF No. 14 at 9.

Plaintiff's arguments are not compelling. Both of these listings require that the child's impairment meet both the (A) and (B) criteria.[4] The ALJ combined his discussion of the paragraph (B) criteria for both listings, noting for listing 112.11 that the "'b' criteria were not met as discussed below" in conjunction with the listing 112.15 discussion. The ALJ determined that Claimant had no limitation in understanding, remembering, or applying information; interacting with others; or adapting or managing oneself; and moderate limitation in concentrating, persisting, or maintaining pace. In making these findings, the ALJ noted that Claimant was not present when her mother was murdered, and medical records indicated her PTSD symptoms were improving. R. 21.

---

[3] Although Plaintiff mentions an "opinion" from Dr. Buck, there is no specific argument about what was ignored or mishandled by the ALJ. Plaintiff only vaguely refers the Court to "the treatment records of her treating psychiatrist, Dr. Buck (R. 293-349)" to state that her symptoms are documented throughout the record. Notably, these same records are referenced by the ALJ in his discussion of why Claimant does not meet or medically equal a listing.

[4] Listing 112.15 has an alternative requirement that the Claimant can meet either (A) and (B) **or** (A) and (C), but Plaintiff does not argue that Plaintiff meets or equals the paragraph (C) criteria, and the evidence does not support that finding in any case.

To support his findings of "no limitation" in the three areas noted above, the ALJ noted several examples of essentially normal findings. However, Plaintiff complains the ALJ misrepresented the medical records upon which he relied. Plaintiff provides a few examples of contrary medical records – namely, that Claimant "had fights" with other children in school (R. 282), was fearful to be alone and "afraid of toilets and bathtub drains because people come out of those items (R. 261), was "thrown out" of daycare for scaring the other children (R. 298), and reports from Plaintiff that Claimant had regular "melt-downs" (R. 307). After review of these aspects of the record, the Court finds they do not overwhelm the remaining evidence of record showing improvement of Claimant's symptoms as discussed by the ALJ. *See* R. 299, 301, 304, 308, 312, 318, 328, 332, 336, 340. The ALJ noted both positive and negative entries by Dr. Buck throughout the treatment period and discussed each of these incidents further in his discussion of functional equivalence. R. 21-33.

Plaintiff also argues that the ALJ improperly ignored the Vanderbilt ADHD Diagnostic Teacher Rating Scale forms. However, these forms are contained in Dr. Buck's records found at Exhibit 2F. R. 293-344. A review of the ALJ's decision as a whole shows that the ALJ adequately reviewed and considered all of the Vanderbilt forms submitted by Claimant's teachers in the context of reviewing Dr. Buck's medical records. Notably, in the functional equivalence discussion of the ALJ's decision, the ALJ specifically stated:

> In February 2015, the claimant's teacher completed a Vanderbilt ADHD form (2F/33-34). Following review by Tara Buck, M.D., it was noted that claimant was only sub threshold for ADHD and she would monitor (2F/36). In May 2015, [Plaintiff] reported increased concern with the claimant's impulsivity (2F/40). However, she reported the claimant was not having nightmares, her anxiety level was doing quite well, she was progressing nicely in therapy, and she was sleeping much better. The mental status examination noted some hyperactivity in play, but was otherwise unremarkable (2F/40). The claimant's diagnoses of PTSD and insomnia were updated to improved, but her disruptive behavior disorder was left unchanged and stated to consider a stimulant trial before the next year (2F/40-41).

7

R. 24-25. The Court finds that Plaintiff is essentially asking the Court to reweigh the evidence, which is improper. *See Hackett*, 395 F.3d at 1172 (court may not reweigh evidence or substitute its judgment for the ALJ's).

> **B. The ALJ Reasonably Weighed the Evidence in Concluding that Claimant's Impairments Did Not Functionally Equal a Listing**

Plaintiff argues the ALJ erred in assessing Claimant's functional capabilities in three of the six functional domains: (1) Acquiring and Using Information; (2) Interacting and Relating with Others; and (3) Attending and Completing Tasks. After lengthy discussion of the overall evidence, the ALJ assessed Claimant with a less than marked limitations in the first two domains, and a marked limitation in the domain of Attending and Completing Tasks. R. 26-28, 29-30, 28-29. As explained below, the undersigned finds no reversible error in the ALJ's analysis of these domains and finds the conclusion supported by substantial evidence.

> **1. Acquiring and Using Information**

The domain of Acquiring and Using Information contemplates how well a child is able to acquire or learn information, and how well a child uses the information she has learned. This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community. 20 C.F.R. § 416.926a(g). Under this domain, the ALJ noted that Claimant's school, medical records, and testimony from Plaintiff supported less than marked limitations. R. 27-28. The ALJ found:

> In a Child Function Report, [Plaintiff] alleged the claimant's ability to progress in learning is limited (1E/5). She alleged the claimant is unable to read capital letters, unable to read simple words, unable to read and understand simple sentences, unable to read and understand stories in books/magazines, unable to spell most 3-4 letter words, unable to write a simple story with 6-7 sentences, unable to add and subtract numbers over 10, does not know the days of the week or months of the year, does not understand money, and does not tell time. However, she alleged the claimant is able to read capital letters and small letters, print some letters, print her name, and write in longhand.

8

> In a Teacher Questionnaire, it was alleged the claimant had an obvious problem in comprehending and doing math problems, providing organized oral explanations and adequate descriptions, expressing ideas in written form, and applying problem-solving skills in class discussions (4E/3). However, it was alleged she had only a slight problem in understanding school and content vocabulary, reading and comprehending written material, understanding and participating in class discussions, learning new material, and recalling and applying previously learned material with no problem in comprehending oral instructions.

*Id.*

Plaintiff argues the ALJ should have given greater weight to the Vanderbilt Teacher Questionnaire answers, given that those forms establish that Claimant has marked limitations in this domain because "the very often problem area" of the Vanderbilt Questionnaire is the highest rating, and "it follows that it should be equated with the term 'Extreme' on the Listing Equivalence findings." ECF No. 14 at 10. Even if the Vanderbilt Teacher Questionnaires could have supported a finding of greater limitations in this domain, the issue for judicial review is whether the ALJ's decision is supported by substantial evidence, not whether Plaintiff's position is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted). The Court finds the ALJ adequately explained his reasoning and that such reasoning is supported by substantial evidence.

### 2. Interacting and Relating with Others

The domain of Interacting and Relating with Others considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. This domain includes how the child interacts and relates with others in all aspects of social interaction at home, school, and in the community. 20 C.F.R. §

416.926a(i). Under this domain, the ALJ noted that Claimant's school, medical records, and testimony from Plaintiff supported less than marked limitations. R. 30. The ALJ found:

> In a Child Function Report, [Plaintiff] alleged the claimant does not get along well with kids her own age and does not play team sports (1E/7). However, she alleged the claimant has friends her own age, can make new friends, generally gets along with Ms. Hall and other adults, and generally gets along with school teachers.
>
> In a Teacher Questionnaire, it was alleged the claimant had no problems interacting an relating with others (4E/5-6).
>
> Early mental status examination noted the claimant's eye contact was occasionally avoidant (2F/8/12/16). However, subsequent examination found no avoidance in eye contact (2F/20/26/36/40/44/48).

*Id.*

Plaintiff argues she "does not agree" with the ALJ's finding in this domain. Plaintiff cites earlier reports of Claimant "not want[ing] to leave her home unless she has to for doctor's appointments or to go to the store with her Grandmother," "fights at school," and disrespectful behavior at home, arguing that the ALJ should have found "at least" a marked limitation in this domain. ECF No. 14 at 11. Plaintiff has identified some potentially conflicting evidence, but Plaintiff has wholly failed to demonstrate that the ALJ committed error or that his conclusion was unsupported by substantial evidence. Plaintiff essentially asks the undersigned to re-weigh the evidence in Claimant's favor, which is not permitted. *See Lax*, 489 F.3d at 1084.

### 3. Attending and Completing Tasks

The domain of Attending and Completing Tasks considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the mental pace at which she performs activities and the ease of changing activities. This domain also refers to a child's ability to avoid impulsive thinking and her ability to prioritize competing tasks and manage her time. 20 C.F.R. § 416.926a(h). Under this domain, the ALJ

10

noted that Claimant's school, medical records, and testimony from Plaintiff supported a marked limitation. R. 29. The ALJ found:

> In a Child Function Report, [Plaintiff] alleged the claimant is unable to keep busy on her own, does not finish things she starts, does not complete homework, and does not complete chores most of the time (1E/9). [Plaintiff] states she has to explain and stay on the claimant to keep her focused. In addition, [Plaintiff] reported the claimant has to be told and explained in detail several times what to do and how to do it in regards to taking care of her personal needs (1E/8). However, [Plaintiff] stated the claimant does work on arts and crafts projects (1E/9).
>
> In a Teacher Questionnaire, it was alleged the claimant had a serious problem focusing long enough to finish assigned activity/tasks, refocusing to tasks when necessary, changing from one activity to another without being disruptive, organizing her own things or school materials, and working without distracting herself or others (4E/4). In addition, it was alleged the claimant had an obvious problem carrying out single-step and multi-step instructions. However, it was alleged she only [had] a slight problem waiting to take turns, completing class/homework assignments, completing work accurately without careless mistakes, and working at reasonable pace/finishing on time. In addition, it was alleged she has no problems paying attention when spoken to directly or sustaining attention during play/sports activities.
>
> However, in October 2015, the claimant was started on medication for ADHD (2F/49). The only records we have following this treatment, note the claimant was able to focus, sit appropriately, and answer questions appropriately (7F/17). In addition, the mental status examination by her treating physician, Dr. Buck found her concentration to be good (2F).

*Id.*

Plaintiff argues that the ALJ should have found this domain limitation extreme based solely on the undeveloped argument regarding the Vanderbilt Questionnaire forms addressed *supra* at Section IV.B.1. For similar reasons explained above, Plaintiff again fails to show that the ALJ's conclusion was unsupported by substantial evidence or legally erroneous, and Plaintiff is simply asking the Court to reweigh the evidence.

### C. Plaintiff Timely Raised the Appointments Clause Challenge[5]

For purposes of this motion, the Commissioner concedes that the ALJ who decided Plaintiff's case was not validly appointed under the Appointments Clause of the U.S. Constitution. The Commissioner only disputes whether Plaintiff's challenge was timely.

"[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia v. S.E.C.*, __ U.S. ___, 138 S. Ct. 2044, 2055 (2018) (internal quotations omitted). In *Lucia*, the plaintiff raised the challenge "before the [Securities and Exchange Commission], and continued pressing that claim in the Court of Appeals and this Court." *Id.* Seizing on this language, the Commissioner argues Plaintiff's challenge is not "timely," because it was not made "at any point in the administrative proceedings." ECF No. 15 at 7. However, as recently made clear by the Tenth Circuit, "underlying securities laws expressly require issue exhaustion." *Malouf v. S.E.C.*, 933 F.3d 1248, 1256 (10th Cir. 2019) (holding that Appointments Clause challenge was forfeited due to failure to comply with mandatory exhaustion requirement). In contrast, no Social Security laws or regulations require issue exhaustion. *Sims v. Apfel*, 530 U.S. 103, 108 (2000) (explaining that, although statutes or agency regulations commonly require issue exhaustion in administrative appeals, no statute or SSA regulations do so). This has not changed in the nineteen years following *Sims*. Therefore, *Lucia* does not clearly or directly answer the timeliness question in the Social Security context. *See Sims*, 530 U.S. at 109-10 (explaining that, in absence of statute or regulation, courts must carefully consider type of agency proceedings before requiring issue exhaustion).

---

[5] The Court has addressed this argument in prior decisions and reversed the Commissioner's decision to deny benefits based on the lack of a validly appointed ALJ. *See, e.g., Daryn Lee W. v. Saul*, No. 18-CV-401-JFJ, 2019 WL 4751551, at *8 (N.D. Okla. Sept. 30, 2019). The Commissioner has appealed these decisions to the Tenth Circuit. The analysis below is virtually identical to the analysis in prior decisions, except to cite the recent decision on this issue from the Third Circuit Court of Appeals.

The question presented is whether a Social Security claimant must exhaust the Appointments Clause issue before the ALJ in order to raise it on appeal to a district court.[6] One circuit court has reached this precise question and has concluded that the Appointments Clause issue is not forfeited, even if not raised before the ALJ. *See Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152-158 (3d Cir. 2020). In reaching this conclusion, the Third Circuit found that the importance of Appointments Clause claims, the reasoning of *Sims*, and the balancing of individual and governmental interests all weighed against imposing an exhaustion requirement for Appointments Clause challenges. *Id.* A minority of lower courts, employing varying rationales, also have held that an Appointments Clause challenge may be raised for the first time before the district court. *See, e.g., Kellett v. Berryhill*, No. CV 18-4757, 2019 WL 2339968, at *7 (E.D. Pa. June 3, 2019) (relying on *Sims*' reasoning and "futility of objecting before an ALJ who was powerless to decide a constitutional question"); *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349, 352-362 (E.D.N.C. 2019) (relying on *Sims*' reasoning; separation of powers concerns; reluctance to apply exhaustion requirements to constitutional issues; and courts being "poorly equipped" to fashion an issue-exhaustion requirement for SSA proceedings); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 420-26 (M.D. Pa. 2019) (limiting rationale to failure to exhaust constitutional issues and issuing alternative holding that, even if forfeited, court would exercise discretion to excuse failure to exhaust), *aff'd sub nom. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (10th Cir. 2020). On the other hand, the majority of lower courts addressing the question have held that the Appointments Clause issue is forfeited if not raised. *See, e.g., Fortin v. Comm'r of Social Security*, 372 F. Supp. 3d 558, 567 (E.D. Mich. 2019) (holding that Appointments Clause challenge was forfeited because

---

[6] As explained below, Plaintiff was not required to exhaust the Appointments Clause issue before the Appeals Council in order to preserve it. *See Sims*, 530 U.S. at 112. The Commissioner's argument only succeeds, therefore, if Plaintiff was required to exhaust the issue before the ALJ.

13

not raised before the ALJ and providing thorough explanation of both sides of issue) (string-citing twelve cases supporting majority position). Within the Tenth Circuit, courts are split. *Compare, e.g., Pearson v. Berryhill*, No. 17-4031-SAC, 2018 WL 6436092 (D. Kan. Dec. 7, 2018) (issue forfeited), *with Kim L. M. v. Saul*, No. 18-CV-418-FHM, 2019 WL 3318112, at *6 (N.D. Okla. July 24, 2019) (issue not forfeited) (holding that *Sims*' reasoning logically extends to other steps in the SSA process).

As this Court has previously held, prior to the Third Circuit's decision, a social security claimant does not forfeit an Appointments Clause challenge by failing to exhaust the issue before the ALJ. First, this Court can discern no principled basis for distinguishing *Sims* from the instant case. In *Sims*, the Court held that that a claimant need not exhaust issues in a request for review by the Social Security Appeals Council in order to preserve issues for appeal to a district court. *Sims*, 530 U.S. at 112. Although the Court declined to reach the question of "whether a claimant must exhaust issues before the ALJ," *id.* at 107, the underlying reasoning in *Sims* applies to the entire Social Security process.

Writing for the Court, Justice Thomas first explained that the rationale for requiring issue exhaustion is "much weaker" when the "administrative proceeding is not adversarial." *Id.* at 110.[7] Writing for a plurality, he reasoned that the "differences between courts and agencies are nowhere more pronounced than in *Social Security proceedings*" and that "*Social Security proceedings* are inquisitorial rather than adversarial." *Id.* at 110-11 (emphasis added). The plurality further reasoned: "It is *the ALJ*'s duty to investigate the facts and develop the arguments both for and against granting benefits . . . and the Council's review is *similarly broad*." *Id.* at 110-11 (emphasis added). In concluding that the analogy to judicial proceedings is at is weakest in the Social

---

[7] *Sims* is a plurality opinion, with Parts I and II-A garnering five votes and Part I-B garnering only four.

Security context, the plurality explained that "[t]he Council, not the claimant, has primary responsibility for identifying and developing the issues." *Id.* at 112. One could easily substitute "the ALJ" for the "Council" in the preceding sentence. The plurality also explained that SSA regulations make "quite clear" that the entire "SSA," not merely the Appeals Council, conducts its review in a nonadversarial and informal way. *Id.* at 111. Further, like the Appeals Council forms, the ALJ-level forms also require claimants to provide only a minimal amount of information, indicating the ALJ does not depend significantly on claimants to identify issues for review. *See Bradshaw*, 372 F. Supp. 3d at 356-57 (explaining similarity of requirements in forms). The overall reasoning in *Sims* indicates that the SSA regulatory scheme cannot be parsed into adversarial and non-adversarial stages for purposes of issue exhaustion.[8] *But see Marilyn R. v. Saul*, No. 18-CV-4098, 2019 WL 4389052, at *4 (C.D. Ill. Sept. 13, 2019) (reasoning that claimants "have more responsibility for identifying the issues" at the ALJ level and that the ALJ level "is more adversarial").

Second, courts are not equipped to design a fair, well-considered issue-exhaustion requirement for Social Security proceedings. *See Bradshaw*, 372 F. Supp. 3d at 360. In this case, the Commissioner's arguments are not limited to the Appointments Clause context. *See* ECF No. 16 at 13 (arguing that courts should find forfeiture for any and all "arguments [a claimant] had not

---

[8] The law review article cited by the *Sims* plurality does not distinguish between the two levels of review and argues against any issue-exhaustion requirement in Social Security cases. *See* Jon C. Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum. L. Rev. 1289, 1341-42 (1997) (reasoning that "issue exhaustion is doctrinally and functionally incompatible with the SSA's inquisitorial model and operating reality" and that "courts should reject the doctrine's application to SSA proceedings"). That author reasoned that "[t]he degree of agency judicialization required to justify issue exhaustion would undermine the mass justice efficiency of the SSA's inquisitorial model, place substantial strain on an already overburdened and dysfunctional adjudicative bureaucracy, and still fail to protect the judicial review rights of claimants lacking counsel in agency proceedings." *Id.*

15

presented to the ALJ"). Yet as explained in *Bradshaw*, any judicially imposed issue-exhaustion requirement implicates several considerations: (1) the precise definition of "issue" or "argument"; (2) whether there should be an exception for constitutional issues;[9] (3) whether it should apply to all claimants or only those represented by counsel; and (4) whether failure to raise is an absolute bar or whether there are exceptions for newly discovered evidence. *Bradshaw*, 372 F. Supp. 3d at 360-61. Further, the exhaustion requirement requested by the Commissioner would impose an exhaustion requirement only at the ALJ level, and not at the subsequent Appeals Council level. *See Kim L.M.*, 2019 WL 3318112, at *6. It seems illogical to require exhaustion before the ALJ, but then excuse exhaustion before the final level of agency review. In short, the Court is wary of injecting an imprecise issue-exhaustion requirement into the complex and heavily regulated Social Security scheme, particularly where the Supreme Court failed to do so for the highest level of agency review.

Finally, language in Tenth Circuit law favors the minority position. In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (emphasis added), the Tenth Circuit stated:

> Indeed, there is nothing in the record before us to indicate that the conflict was raised until the district court proceeding that commenced two years after the ALJ hearing. The Supreme Court has ruled, however, that a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) *need not preserve issues in the proceedings before the Commissioner or her delegates. See Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

---

[9] Some courts in the minority have found the constitutional nature of the question to weigh against forfeiture, essentially because courts should be most reluctant to relinquish their ability to decide constitutional questions. *See Bradshaw*, 372 F. Supp. 3d at 362; *Bizarre*, 364 F. Supp. 3d at 424. Some courts in the majority have found this nature to weigh in favor of forfeiture, because constitutional issues are not part of the typical "inquisitorial process." *See Marilyn R.*, 2019 WL 4389052, at *5 (reasoning that ALJ has no occasion to identify an Appointments Clause issue unless identified by the claimant); *Fortin*, 372 F. Supp. 3d at 565 (reasoning that where "the challenge is to the structural integrity of the process itself, the adversarial nature of the litigation reemerges").

16

The Commissioner argues this holding is limited to issues that an ALJ has "an affirmative duty to address," such as conflicts between vocational expert testimony and the Dictionary of Occupational Titles. ECF No. 16 at 16. The Court agrees that the challenged issue is distinguishable, and the Tenth Circuit does not appear to have meaningfully considered whether *Sims* extends to the ALJ-level of review. But there does not appear to be any other published Tenth Circuit decision limiting this language in *Hackett* or reaching a contrary result. *Cf. Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2018) (imposing issue-exhaustion requirement at ALJ-level when claimants are represented by counsel). Accordingly, the most relevant published decision in the Tenth Circuit counsels against a finding of forfeiture.

## V.     Conclusion

Plaintiff did not forfeit her Appointments Clause by failing to exhaust the issue before the ALJ. The Commissioner does not dispute that the ALJ was not properly appointed under the Appointments Clause of the U.S. Constitution. Accordingly, the ALJ's decision is **REVERSED** and the case is **REMANDED** for further proceedings before a constitutionally appointed ALJ.[10] All other issues presented on appeal are **affirmed.**

**SO ORDERED** this 5th day of June, 2020.

*(signature)*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[10] The proper remedy for an invalidly appointed ALJ is a new hearing before a properly appointed ALJ. *See Lucia*, 138 S. Ct. at 2055.